at Stockett 24-1510. Ms. Johnson, please proceed when you're ready. Thank you. May it please the Court, my name is Gail Johnson and I represent Kylear Williams in this direct appeal from the denial of his motion to suppress. The question before the Court is whether the warrantless search of the vehicle that Mr. Williams was driving can be justified as reasonable under the Fourth Amendment as an allowable protective sweep that was supported by concerns for officer safety. Now the government bears the burden of showing that this warrantless search was reasonable and in order to do that in this case they need to show that the search was supported by two different, by reasonable articulable suspicion of two different prongs. First, that the suspects posed an immediate or present danger to officers or others. And second, that that suspect might gain access to a weapon. Here the government doesn't get past the first prong because we have a distinction between the person they think is dangerous and the person that they're supposedly protecting themselves from. Namely, the government agrees here that Mr. Williams, who was in custody, handcuffed in a patrol car more than 25 feet away from the the vehicle in question, he wasn't posing a threat to officer safety at the time of the protective sweep. So the government's theory here, which the district court adopted, is that the danger was posed by Mr. Williams's girlfriend, Ms. Richardson. You'll need to unlock your iPhone first. I apologize, Your Honor. I'm not sure how that came. I've turned it off. Won't happen again. So the government spends all its time talking about dangerousness with respect to Mr. Williams, but they don't disagree that Mr. Williams didn't pose a danger to the officers at the time of the protective sweep. Now, the notion that simply by dint of the romantic relationship between Mr. Williams and Ms. Richardson herself posed an immediate or present danger to the officers and might gain access to it. That theory, in our view, is based on the exact kind of inchoate suspicions and unparticularized hunches that the Fourth Amendment clearly prohibits. I know the court has read the briefs, but to really quickly summarize the facts, Ms. Richardson had no warrants. She had a valid driver's license. She owned the car. There was no indication that she or Mr. Williams, for that matter, had committed any crime that evening. Again, Mr. Williams was pulled over in a routine traffic stop for failing to signal a left turn. And Ms. Richardson, I think this is clear from the videos and the officers' reports, was 100% compliant, cooperative, and polite with the officers. So, I know the government relies somewhat on these common enterprise cases such as Denison and perhaps Faker, and I do want to address that briefly. Those cases involve situations where either one of the individuals in the car was a suspect in a particular crime that had just occurred that evening, or where one of the individuals in the car had made a suspicious furtive gesture, or both of those factors. Neither of those factors are present here. The officers observed no furtive gestures from either Mr. Williams or Ms. Richardson at any time, and there was no suspicion or report that the officers were following up on, or any indication whatsoever that either of them had been involved in a crime that had just occurred. So, I'd ask the court to reverse the judgment of conviction and remand with directions to grant the motion to suppress, but I'd be happy to answer any questions the court may have. And seeing none, if I may reserve my remaining time for rebuttal. Thank you. Mr. Brewell, when you are ready. May it please the court, Bishop Brewell on behalf of the United States. In Mr. Williams' response to our 28J letter about the McGregor decision, he effectively conceded that he himself, that there was reason for the officers to suspect that he himself was armed and dangerous. The only distinction they raise is basically whether that reasonable suspicion could then be attributed to his girlfriend, who would be allowed back in the car. Just how could that happen? How could that suspicion about whether this defendant might have been armed and dangerous, if he were in the vehicle, which he wasn't because he was handcuffed, arrested, and in the squad car. How is it that somehow we're going to just assume that this girlfriend, who is courteous, polite, cooperative, does nothing absolutely out of the ordinary, has her registration papers, owns the vehicle, has a valid driver's license, and is ready to drive the car home. What are we possibly basing an assumption on, that there's reasonable suspicion that she is both armed and dangerous at this point? Because all of those same facts that you raised, Your Honor, were true of Mr. Dennis. What does that have to do with particularized suspicion about the occupant of the vehicle, which is what is required? What do we have, what do we know about this occupant, which was the girlfriend at this point, to indicate that she was somehow armed and dangerous? The same thing that we knew about Mr. Dennison in that case. We knew that she had been in this small car in a high crime area late at night. That is what you had for Mr. Dennison. He showed his identification, he owned the car. We got a lot more for Mr. Dennison. I mean, there's all kinds of stuff. He was nervous, he avoided eye contact, he listed the Denver Detention Center as his residence, he admitted he'd been locked up for an organized crime violation, he admitted he was a member of a gang, he had a tattoo on his forehead showing he was a member of the gang, he had two active arrest warrants, and he had a history of weapons offenses. What does that have to do with whether his girlfriend was armed and dangerous? Sorry, I'm not comparing her to Mr. Williams. What else do you have? I'm trying to compare her to Mr. Dennison in the Dennison case, who was just like Ms. Williams, or Mr. Williams' girlfriend. Okay. It's a completely different situation, really. Dennison, where you have these gentlemen who were parked and where they were parked and the concerns about that, and one of them, they're looking to be in concert in criminal activity. She's a passenger in an automobile that gets pulled over for a blinker violation. If you're saying that Dennison controls this case, then I'm not sure I could agree with that. And I guess I'd ask you this, do you think that if we were to agree with you in this case, that we would be extending the circumstances in which protective sweeps are allowed in the circuit by a good margin? No, I think, again, I think this is narrower than Dennison. In Dennison, what this court relied on was the fact when you look at the actual analysis, where they talk about Ibarra and the rest, and they the three things they look at. The fact that he was in this small car in this primary. To the extent there are other facts in there, they didn't rely on those. But if you want to talk about those facts that suggest perhaps there was other criminal activity going on here, likewise with Ms. Williams in the car, you have the fact that she is with a person who's an admitted gang member in a gang area where there's rival gangs in high primary. That might indicate she has poor judgment, but that doesn't indicate that she she's a romantic partner. There's no there's no question that's what they see her as. She's she's a girlfriend, whatever the terminology want to do. But there's no evidence that they were in some kind of joint illegal enterprise. She had a valid driver's license. She owned the car. She produced the registration papers. She's driving with her boyfriend. What is the evidence that the two of them were conducting some sort of illegal enterprise together? Because that's what you're talking about with Dennison. There was not evidence in Dennison that Mr. Dennison had done anything wrong, that he was involved in any criminal activity. Were they in a romantic partnership in that case? No, which makes the facts here stronger. There was more reason for Mr. Williams' girlfriend to get involved than just some other person who happens to be in the car with Mr. Allen. So are you arguing for a per se rule that if your boyfriend's in a gang and in a certain part of town and doesn't use his blinker, no matter how compliant you are, no matter how polite you are to the officers, no matter that they have flashlights shining in your car as you go through the glove box and find your registration and they can see every inch of the inside of the car with the flashlight, that they can see with the flashlight, that per se, that's good enough. You're the girlfriend and therefore we're doing a protective suite and we're going to pat you down with a male officer and then we're going to stand you behind the car and handcuff you while we go through your car. That's just the way it is now? So I'm not arguing for a per se rule. I would argue that she was not handcuffed until they found the weapon in the vehicle. She was brought to the back of the car, but she's not handcuffed at that point. But what we're arguing for is that this court should continue to follow the facts of Denison, where again, all that they had there that the court relied on was small car, late at night, high crime area. And the fact that Mr. Allen there had these outstanding warrants, like Mr. Williams here, this court concluded that it was fair to conclude that because of that situation, small car, late at night, high crime area, it was fair to conclude Mr. Denison being in that vehicle likely knew about Mr. Allen's outstanding warrants, much like it's fair to conclude that, in fact, more fair to conclude that the girlfriend here likely knew about the outstanding warrants and therefore would want to intervene. What would she want to do? Even if there's some inference that could be made, some reasonable inference that they're somehow in some sort of joint enterprise. I mean, what's happened here is that he has not used his signal on a left turn. So what makes us think that even if they're in some kind of joint enterprise, despite the lack of any evidence on her side of that, that she's going to turn around and she's going to take her car that she has a registration for with her valid driver's license after being very nice to the officers and somehow she's going to access the weapon they believe to be there that probably belongs to him and she's going to use that weapon on these officers? Is that the dangerous aspect of it? Is that the inference that we're making here? Why is she dangerous? The court here below concluded that was a fair conclusion to reach and it can do so because there's actually more here again than there was Mr. Dennison. Pause on that. Let's get our Dennison's facts straight because looking at the opinion here, what happens is the policeman encounters these two men at approximately 3 a.m. and where are they parked? They're parked at an Englewood, Colorado apartment complex that has had a high incidence of nighttime car theft. You're comparing that to being the in a car with somebody who is in an area, Mr. Allen, there wasn't even a traffic stop violation there. I'm comparing it to a person who is in a car with somebody who is a gang member in an area where there are tons of rival gangs, where the officers talked about it being an open-air drug market, murderers, robberies, and all sorts of those things going on. So per se rule if you're in that area. What's that? It's a per se rule protective sweep if you're in that area and your boyfriend's in a gang. No matter how polite, no matter how compliant. I think it follows from the facts of Dennison, your honor, that yet if it's late at night, you're sharing this car with somebody in a high crime area, has these outstanding... Don't you see in Dennison the connection there that the cops are concerned that they're going to steal cars because cars have been regularly stolen in that area, which is probably why the policeman's even patrolling there. And they're at three in the morning in a parked car in that area. You're likening that to driving through a public thoroughfare? The reason I'm likening it to it is again, we're not talking about whether there's PC to search a car here. We're not concerned for Michigan belong purposes about whether a crime is occurring. We're concerned about whether there's a danger to the officers. What danger is presented to the officers? Could they be shot on the way leaving the stop by somebody who's going to get back in the car? So let me just make sure I understand. What we're supposed to go for is that this woman who's been compliant, who is in all respects with their automobile registration, with everything that's been asked of her has been compliant, who you cannot ask for a more polite person at a stop like this if you look at the video. And yet her boyfriend is now under arrest. He has active warrants. He's in the back of a patrol car. And despite no firearm being seen with the flashlights, the glove box, obviously there's not one in there because she's rifled through. They're trying to find a registration with flashlight light shining on it that she's going to get in her car and she's going to come out firing to save her boyfriend despite there being multiple cops, police officers. That's what we're supposed to believe. And your honor, with due respect, the facts were the exact same in Denison, but perhaps worse here. Mr. Denison was cooperative throughout the process. There was no gun that had been seen. If you read Denison, the court makes the point of there was no reason to suspect Mr. Denison based on anything about his behavior, anything in his background. He owned the car. He had an identification. He was there with the lights off in this car at 3 a.m. with the lights off with this other driver. When asked why they were there, they said, well, we're here waiting for a tow for this other vehicle, not the one we're in, but this other vehicle that's down the way, the two of them. I mean, there were suspicious circumstances in a very high crime area where there'd been a lot of stuff going on. This is not 3 a.m. This is not two men sitting in a car at 3 a.m. in a high crime area who have a story that doesn't necessarily work. This is one individual failing to use his blinker and his romantic partner who's in the car being extremely cooperative, not providing any answers or any information that is inconsistent or is suspicious, and she's ready to drive the car off. In fact, she's told she can drive the car off by at least one officer, and then suddenly they decide they need to do a sweep because she is potentially armed and dangerous. That's what we have here, and this is not like Denison. If I may focus on, we have a woman who is the intimate partner of a person who is a gang member in rival gang territory where crimes are occurring all the time. We have a concern about officer safety as opposed to about whether a crime is actually occurring. Unlike in Denison, we have a defendant who's actually still there. The court in Denison assumes that Mr. Allen has in fact been taken away, so there's a greater risk because there are more potential cohorts there, and the additional thing we have here is there is the possibility. Can you answer the question I asked before? What made her dangerous? What was the potential? What was she going to do? Pull out a gun and start firing at these officers? Is that what they thought? She could also have, even if there was no gun, she could have used her car. A car can be a dangerous weapon. Did they suspect that she was going to run over them because they'd arrested her boyfriend while she sat and observed? What was the dangerous part of this? The same thing about Mr. Denison that he was in a car with somebody who they had reason to suspect he knew had outstanding warrants because it's late at night in a high crime area, small car. That is completely as cooperative, except that here we have a gang member who is in a rival gang area. Reason to believe because of that, he would be armed. It's her car. Reason to believe that she would know what is in her car. Were they concerned enough that they had her get out of the car before? They did have her and they moved her to the back of the trunk, but they did not handcuff her. No, no. I mean during the encounter, before they decide they're going to do a protective sweep. They had her get out of the car when Mr. Williams got out of the car, so they didn't have all the information that they had when they first stopped them. They don't know about his gang history, that he's just been removed, that he's just gotten out of jail for a violent offense that's involving gang members. They didn't know all that, so they don't pull them out of the car immediately, but when they pull him out, then they pull her out. And when they pull him out, they've got it in mind they're doing the protective sweep. By that time, yes, I believe they, yes, that's when they're going to do the protective sweep. They weren't worried enough about her well before they decided to do the protective sweep, but then they were worried about her. They weren't worried about him either, your honor, because they didn't have enough information about him, but they did testify once there was the concern about him and the fact they were going to let her back to the car. Doesn't that seem odd that they've got this guy who they pulled who immediately they begin to connect as far as gang sort of stuff, and they're not concerned about him enough to get him out of the car, but they are concerned enough about letting her back into her own car to drive away? Because they didn't have all that information that gives the reasonable suspicion, your honor. I mean, they're pulling her out as soon as they're pulling him out, which is the time that they have the reasonable suspicion that there's danger here, reasonable suspicion is, again, a very low standard. We're concerned about officer safety. We're not worried about PC about a crime. I see I'm out of time, but if the court has any further questions, I'm happy to answer them. This should be controlled by Denison and McGregor. Thank you. Thank you. There is rebuttal time, but stick to rebuttal, please. Yeah. Yes, your honor, I'm not going to. I do not anticipate using 11 minutes of rebuttal. I just have two very quick rebuttal points to make. The first being there's no concession in my response to the 28 J letter on McGregor. I simply focused on the relevant question at hand, which is whether Miss Richardson posed a danger. And second, there's one very important fact in Denison that the government continually overlooks, and that is that the passenger there had admitted being involved in a domestic incident, and the police had a police bulletin about a domestic violence crime that had recently occurred. And with that, I will conclude my arguments and reiterate we ask the court to reverse the judgment and remand with directions to grant the motion to suppress. Thank you. All right. Thank you, counsel, for your arguments. The case is submitted, and counsel are excused.